OPINION
Shawn Parker is appealing the judgment of the Montgomery County Court which convicted him of burglary with a three year firearm specification and complicity to commit felonious assault.
On October 17, 2000, at approximately 1:00 a.m., Gerry Griffith, Jr. was asleep on a couch at a neighbor's apartment when he was awakened by a loud bang at the back door. Mr. Griffith awoke to find a gun pointed in his face. The gun was held by a man Mr. Griffith recognized as "Teardrop," with whom Mr. Griffith had a confrontation two days earlier at a gas station. Teardrop was later identified as Shawn Parker. Mr. Parker told Mr. Griffith, "What's up now, mother-fucker?" While Mr. Parker held the gun on Mr. Griffith, he instructed a fellow assailant to "get his [Mr. Griffith's] gun." This second assailant passed in between Mr. Griffith and Mr. Parker, breaking eye contact. Mr. Griffith used this opportunity to attempt to jump off the couch and run towards Mr. Parker in an attempt to flee, but was shot in his right hand by Mr. Parker. Mr. Griffith continued towards the front door and knocked Mr. Parker onto the floor.
Mr. Griffith stumbled to the front door and was able to unlock the top lock on the door with his left hand but before he could unlock the bottom lock he was grabbed from behind by Mr. Parker. Mr. Griffith and Mr. Parker struggled at the door and the gun was knocked out of Mr. Parker's hand. Mr. Parker then called to his accomplice, "Shoot `im. Shoot `im." Mr Griffith then heard four or five gunshots in quick succession. Mr. Griffith then heard Mr. Parker cry out, "Aw, you shot me." Mr. Parker then went down and Mr. Griffith was able to elbow him, unlock the remaining lock on the front door, and escape out the front door. Mr. Griffith ran out the door into the hallway and down the stairs. As he was running down the stairs, Mr. Griffith heard another gunshot behind him. Mr. Griffith never turned around to see who was shooting at him but focused on getting away. Mr. Griffith continued running down several different streets until he finally came upon a police cruiser and flagged it down.
Mr. Parker was indicted on November 30, 2000 with aggravated burglary with a firearm specification and complicity to commit felonious assault. On December 30, 2000, Mr. Parker filed a motion to suppress statements made to police. The trial court held a suppression hearing and overruled Mr. Parker's motion. A jury trial was held on May 7, 8, and 9, 2001. At trial, two of Mr. Griffith's neighbors testified that they heard gunshots and one saw Mr. Griffith running down the stairs and out the building while the other saw a black male running very fast from the rear of the building. Additionally, several police representatives testified regarding the evidence they obtained in investigating the incident. Officer Mullins testified that when he was arresting Mr. Parker, he told the officers "Watch my leg, watch my leg, I've been shot." The jury found Mr. Parker guilty of both of the counts and the firearm specification. Mr. Parker was sentenced to a seven year term of incarceration for aggravated burglary and a mandatory consecutive three year term of incarceration for the firearm specification and a seven year term of incarceration for complicity to commit felonious assault, which was to be served concurrent with the sentence for aggravated burglary. Mr. Parker has filed this appeal from the judgment.
Mr. Parker raises the following assignments of error:
 "1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S REQUEST FOR CONTINUANCE, OF ANY LENGTH WHEN DEFENSE COUNSEL HAD NOT REQUESTED ANY PRIOR CONTINUANCES, THE CONTINUANCE WAS FOR A LEGITIMATE PURPOSE, APPELLANT DID NOT PURPOSEFULLY CONTRIBUTE TO THE CIRCUMSTANCES GIVING RISE TO THE NEED FOR THE CONTINUANCE, BECAUSE THERE WAS NO EVIDENCE THAT SUCH CONTINUANCE WOULD INCONVENIENCE THE LITIGANTS, THE WITNESSES OR OPPOSING COUNSEL, AND BECAUSE THE CONTINUANCE WAS NECESSARY TO SECURE THE TESTIMONY OF WITNESSES WHICH WOULD HAVE BOLSTERED THE TESTIMONY OF APPELLANT'S SOLE WITNESS AND EXCULPATED APPELLANT.
 "2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AND IN ALLOWING THE ADMISSION OF STATEMENTS WHICH APPELLANT ALLEGEDLY MADE WHEN HE WAS PLACED UNDER ARREST AND HELD IN CUSTODY ON A WARRANT RELATING TO THE OCTOBER 17, 2000 ALLEGED CRIME BY THE SAME OFFICER THAT RESPONDED TO THE SCENE ON OCTOBER 17, 2000 AND INVESTIGATED THE CRIME WHERE APPELLANT, EVEN AFTER A "FELONY TAKEDOWN" WITH AS MANY AS 14 OFFICERS RESPONDING WAS NEVER PROVIDED THE PROCEDURAL SAFEGUARDS OF BEING READ HIS MIRANDA WARNINGS.
 "3. THE TRIAL COURT COMMITTED ERROR REQUIRING REVERSAL OF APPELLANT'S CONVICTIONS AND DISCHARGE OF APPELLANT IN FAILING TO ACQUIT APPELLANT OF AGGRAVATED BURGLARY WHERE THE STATE, WITH THE BURDEN OF SO PROVING, FAILING TO INTRODUCE ANY EVIDENCE THAT THE LESSEE OF THE APARTMENT WHERE THE CRIME ALLEGEDLY OCCURRED DID NOT GIVE APPELLANT PERMISSION TO BE IN HIS APARTMENT AND, THEREFORE, FAILED TO PROVE THAT APPELLANT TRESPASSED, AN ESSENTIAL ELEMENT OF THE CRIME OF AGGRAVATED BURGLARY. THE TRIAL COURT ALSO ERRED IN FAILING TO ACQUIT APPELLANT OF COMPLICITY WHERE THE STATE FAILED TO INTRODUCE ANY EVIDENCE THAT THE UNSEEN, UNIDENTIFIED ASSAILANT INTENDED TO COMMIT A FELONIOUS ASSAULT AGAINST THE ALLEGED VICTIM AS OPPOSED TO APPELLANT, WHOM THE ALLEGED VICTIM CLAIMS WAS ACTUALLY SHOT.
 "4. THE TRIAL COURT COMMITTED PLAIN ERROR REQUIRING REVERSAL OF THE GUN SPECIFICATION ATTACHED TO THE COURT FOR AGGRAVATED BURGLARY WHEN IT INSTRUCTED THE JURY ON THE ELEMENTS OF A ONE-YEAR GUN SPECIFICATION BUT INSTRUCTED THE JURY THAT IF IT FOUND THOSE ELEMENTS TO SIGN THE VERDICT FORM WHICH CONVICTED APPELLANT OF A THREE-YEAR GUN SPECIFICATION.
 "5. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CONVICTING APPELLANT BECAUSE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO HEARSAY TESTIMONY WHICH BOLSTERED APPELLEE'S EYEWITNESS IDENTIFICATION TESTIMONY, AND FAILED TO OBJECT TO IMPROPER CHARACTER EVIDENCE WHICH INVITED THE JURY TO SPECULATE AND INFER AS TO APPELLANT'S CHARACTER AND GUILT.
 "6. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION FOR A MISTRIAL AFTER THE STATE REPEATEDLY ENGAGED IN TACTICS, SUCH AS ELICITING `EXPERT OPINION' TESTIMONY THAT THE STATE'S WITNESS WAS BEING TRUTHFUL, WHICH WERE DESIGNED TO AND SUCCEEDING IN DEPRIVING APPELLANT OF A FAIR TRIAL.
 "7. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CONVICTING APPELLANT OF AGGRAVATED BURGLARY, WITH A THREE-YEAR GUN SPECIFICATION, AND COMPLICITY TO COMMIT FELONIOUS ASSAULT WHEN THE MANIFEST WEIGHT OF THE EVIDENCE DEMONSTRATES THAT APPELLANT WAS NOT EVEN PRESENT AT THE ALLEGED SCENE OF THE CRIMES IN QUESTION BUT WAS MERELY FRAMED BY THE STATE'S WITNESS, A CONVICTED DRUG TRAFFICKER, WHO HAD A LONG-STANDING ANIMOSITY TOWARD APPELLANT."
Appellant's first assignment of error:
Mr. Parker argues that the trial court erred in overruling his motion for a continuance on the day trial was set to begin. We disagree.
The determination whether or not to grant a continuance lies within the sound discretion of the trial court and will not be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. State v. Grant, 67 Ohio St.3d 465, 479, 1993-Ohio-171;State v. Unger (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41. In deciding whether a trial court abused its discretion in denying a motion for continuance, "the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." State v. Sowders (1983), 4 Ohio St.3d 143,144 citing Ungar v. Sarafite (1964), 376 U.S. 575, 589-90.
"In evaluating a motion for continuance, a court should note, interalia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." State v. Unger, supra at 68.
It is within the trial court's discretion to decide which of the above factors is to be given the most weight. State v. Christon (1990),68 Ohio App.3d 471, 477.
When defense counsel moved for a mistrial, counsel stated that within the past week, Mr. Parker had given him the names of various witnesses, which Mr. Parker claimed to be exculpatory, but counsel had been unable to locate the witnesses and confirm Mr. Parker's representations as to their materiality. Defense counsel did not describe to the court what efforts he had made to locate the witnesses or whether the witnesses could be located in a reasonable time. Additionally, defense counsel did not disclose the identity of the witnesses or proffer their testimony in order for the trial court to determine the materiality of the witnesses.
Mr. Parker had been in jail for over a week, during which time defense counsel could consult with him. Therefore, defense counsel should have known several days earlier of the difficulty he was having in obtaining these witnesses. Yet, defense counsel waited until the morning of the trial to request a continuance. (Tr. 1). By the time the continuance was requested prospective jurors had reported to court and were waiting for trial to begin. (Id. 7). As defense counsel could have requested a continuance before that morning, defense counsel should have done so and avoided inconvenience to the court, jurors, and the State's witnesses.
Moreover, the trial court had previously had to reschedule a scheduling conference due to the failure of Mr. Parker to appear. (Id. 2). Mr. Parker was aware since March 6, 2001 that the trial in this matter was set for May 7, 2001, yet, Mr. Parker only periodically attempted to contact his counsel and made no effort to personally meet with him. (Id. 2). This two month period should have been sufficient time for defense counsel to locate witnesses and prepare a defense, yet defense counsel specifically stated that the reason that he had not obtained these witnesses was that Mr. Parker had not cooperated with him or the probation department. (Id. 2). Further Mr. Parker waited until the day before trial to come to his counsel's office and only then did he inform his counsel of various witnesses, which he claimed to be exculpatory. (Id. 3-4).
The trial court stated in overruling the motion for a continuance that the problem in the case lay with Mr. Parker who despite knowing how to contact his counsel for a period of time, failed to do so and failed to cooperate with his defense counsel. (Id. 5-6). The trial court specifically stated that the problem and reason why defense counsel had not been able to contact these witnesses was due to Mr. Parker. (Id.). We agree with the trial court. Mr. Parker clearly contributed to the need for a continuance. Mr. Parker had more than sufficient time to contact his attorney and cooperate with him to prepare a defense and obtain whatever witnesses he felt were necessary. Mr. Parker chose not to do so. This was a legitimate factor for the trial court to consider and weigh heavily. We cannot say that the trial court abused its discretion in refusing to grant the request for a continuance. The first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
Mr. Parker argues that the trial court erred in overruling his motion to suppress. We disagree.
Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.
In determining whether a statement given without the benefit of Miranda warnings should be suppressed, the court must evaluate whether: (1) the defendant was in "custody"; and (2) the defendant was under "interrogation." Rhode Island v. Innis (1980), 446 U.S. 291, 300-302. "Interrogation is broadly construed to include not only the express questioning of a defendant but also any functional equivalent, including "any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response." Id. at 301.
When Mr. Parker was arrested, Officer Mullins and several other officers conducted a "felony takedown" in securing Mr. Parker. In the felony takedown, the officers, with guns drawn, pulled Mr. Parker out of a vehicle and took him forcefully to the ground. Officer Mullins testified that as he was pulling Mr. Parker out of the car he stated, "Watch my leg, watch my leg, I've been shot." (Tr. at 360; Suppression Hearing Tr. 9). Additionally, Officer Mullins testified that later he had taken Mr. Parker to a holding cell in the jail and was waiting there with two other officers and another detainee. While in this holding cell, Mr. Parker spontaneously said that he "wasn't worried about this case because the guy that, uh . . . said he was — was robbin' him was the one that shot him." Tr. at 362. Officer Mullins testified that he didn't know to whom Mr. Parker was talking. Mr. Parker was not given his Miranda warnings prior to him making these statements.
Mr. Parker argues that Officer Mullins was aware that Mr. Griffith's attacker had reportedly been shot and therefore that Officer Mullins purposefully used a felony takedown to arrest Mr. Parker to elicit incriminating statements. Thus, according to Mr. Parker, since Officer Mullins knew that the forcefulness in his takedown would elicit an incriminating response, the officers' actions amounted to an interrogation. At the suppression hearing, Officer Mullins explained that the officers used a "felony takedown" because they knew Mr. Parker often had carried a gun. (Suppression Hearing Tr. 8). We disagree with Mr. Parker that the officers executed a felony takedown in order to elicit an incriminating statement. Rather the felony takedown was reasonable for the officers safety in light of the knowledge that Mr. Parker usually carried a gun. Therefore, we find that no interrogation occurred when Mr. Parker stated, "Watch my leg, watch my leg, I've been shot." As there was no interrogation, the statement need not be suppressed because of the lack of Miranda warnings.
As for the statement in the jail holding area, Mr. Parker argues that Officer Mullins is lying when he stated that no one asked Mr. Parker a question prior to his spontaneous statement, that he "wasn't worried about this case because the guy that, uh . . . said he was — was robbin' him was the one that shot him." Officer Mullins offered uncontradicted testimony at the suppression hearing that neither he nor the other two officers posed any questions to Mr. Parker to elicit the incriminating statement. (Id. 11-12, 22). Officer Mullins further explained that he believed Mr. Parker was talking to the other detainee rather than himself. (Id. 11-12, 21-23). Since the officers said nothing to Mr. Parker nor took any actions to elicit the statement, we cannot find that there was an interrogation. Moreover, Mr. Parker may have not even been talking to the officers. Therefore, we find that Mr. Parker's statement in the jail holding cell was voluntary and as such suppression was not required because of the lack of Miranda warnings. The trial court did not err in overruling Mr. Parker's motion to suppress. The second assignment of error is without merit and is overruled.
Appellant's third assignment of error:
 Mr. Parker argues that the trial court erred in overruling his motion for acquittal on the charge of burglary when the State failed to prove the element of trespass and on the complicity charge when the State failed to show that Mr. Griffith was the intended victim of the other assailant's gunfire. We disagree.
Crim. R. 29(A) states:
"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
A trial court properly denies a Crim.R. 29 motion if the evidence is such that "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, quoting State v. Swinger (1966), 5 Ohio St.2d 151. Upon review of a denial of a motion of acquittal, the evidence is construed in a light most favorable to the State. State v. Wolfe (1988), 51 Ohio App.3d 215,216.
The crime of aggravated burglary is set out in R.C. 2911.11 as follows, "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense." A trespass is defined in R.C. 2911.21(A)(1) as "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." Privilege is further defined in R.C. 2901.01(A)(12) as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."
Mr. Parker argues that since the State did not offer the testimony of Tyrone, the legal tenant of the apartment, to explicitly testify that Mr. Parker was not permitted in the apartment, the State did not prove that Mr. Parker was a trespasser. At trial, Mr. Griffith testified that he frequently spent time at Tyrone's apartment and that Tyrone had given him permission to exclude others from the apartment when Tyrone was not present. (Tr. 162-163, 169, 305-306). Further, Tyrone had given Mr. Griffith keys to both the front and back doors of the apartment and Mr. Griffith testified that he was "in charge" when Tyrone was not in the apartment because "[n]o one else was there." (Id. 163, 305-06). Mr. Griffith specifically testified that he did not give Mr. Parker permission to enter the apartment. (Id. 307).
Additionally, Mr. Griffith testified that on the night of October 16, 2000, after everyone else left the apartment, he locked both the front and back doors and did not let anyone else into the apartment. (Id. 238, 307). Additionally, Mr. Griffith and Officers Mullins and Holmes testified that the back door to the apartment and the doorjamb was damaged. Moreover, the officers noticed when they arrived just minutes after receiving information that shots had been fired in the apartment complex that the dead bolt on the open back door although still in a locked position was extended and loose and the latch attached to the door was bent. (Id. 398-99, 351). Also, Mr. Griffith testified that he was awakened by a loud bang at the back door immediately before he saw Mr. Parker standing in front of him with a loaded gun in his face. (Id. 173, 250). We find that this evidence is such that reasonable minds could come to different conclusions about whether Mr. Parker was a trespasser. It was not necessary for the State to call Tyrone in order to establish that Mr. Parker was a trespasser when Mr. Griffith testified he had the right to exclude others from the apartment, did so by locking the doors and the evidence supported that Mr. Parker had gained entry by breaking in the back door. The trial court did not err in overruling Mr. Parker's motion for acquittal on the aggravated burglary charge.
Mr. Parker also argues that the trial court erred in failing to grant his motion for acquittal on the complicity to commit felonious assault charge because the State did not prove that the second assailant in the apartment was intending to shoot Mr. Griffith. R.C. 2903.11(A)(2) states "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Complicity is defined as when a person "acting with the kind of culpability required for the commission of an offense, * * * [a]id[s] or abet[s] another in committing the offense." R. 2923.03(A)(2). However, "[n]o person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section2923.02 of the Revised Code." R.C. 2923.03(C). This Court has stated that "an attempt to commit an offense can be committed either purposely or knowingly, depending upon the culpable mental state required to commit that particular offense." State v. Walker (June 30, 2000), Montgomery App. No. 17678, unreported. Therefore, if an offense merely requires the culpable mental state of knowingly, an offender is not required to act purposely in an attempt to commit that offense. Id. A person is found to have acted knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
Mr. Parker argues that the State failed to prove that the unidentified assailant intended to cause physical injury to Mr. Griffith. The State argues that it need not prove that Mr. Parker's accomplice intended to shoot Mr. Griffith, but only that his accomplice was aware that his act of aiming and firing a gun at Mr. Griffith would probably cause physical harm to Mr. Griffith. We agree. Mr. Griffith testified that he struggled with Mr. Parker at the front door to the apartment and that in the struggle Mr. Parker dropped his gun. (Tr. 178). Mr. Griffith then heard Mr. Parker order his accomplice to "Shoot `im. Shoot `im." (Id. 178, 186, 289). Immediately thereafter, Mr. Griffith heard four or five gunshots and then heard Mr. Parker shout, "Aw, you shot me." (Id. 186). Mr. Griffith later observed bullet strikes in "the lower bottom of the front door." (Id. 188). Additionally, Officer Holmes observed bullet strikes "in the wall just to the left of the front door." (Id. 410). Mr. Griffith testified that at some point during the struggle he was standing to the left of the front door. (Id. 280-81, 310). The evidence indicating that the accomplice fired his gun in the direction of Mr. Griffith and only upon Mr. Parker's orders that he shoot Mr. Griffith strongly supports that the accomplice knowingly attempted to cause physical harm to Mr. Griffith specifically, not Mr. Parker. Despite the fact that Mr. Parker was actually shot, the evidence strongly supports that the accomplice aimed his gun at Mr. Griffith. Therefore even though the accomplice did not actually hit Mr. Griffith, his conduct was sufficient to constitute a knowing attempt to cause physical harm to Mr. Griffith. The trial court did not err in overruling Mr. Parker's motion for acquittal on the complicity to commit felonious assault charge. The third assignment of error is without any merit and is overruled.
Appellant's fourth assignment of error:
 Mr. Parker argues the trial court committed plain error when it gave the jury instructions on the elements of a one year gun specification when the verdict form convicted him of a three year gun specification. We disagree.
Crim. R. 30(A) provides "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim. R. 52(B). An appellate court should only take notice of plain error with the utmost caution, under exceptional circumstances and to prevent a manifest miscarriage of justice. State v. Jenks (1991), 61 Ohio St.3d 259,282. Plain error does not exist unless it can be said that but for the error the outcome of the proceeding would have been different. Id.
R.C. 2941.145(A) provides:
 "Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. * * *"
The Ohio Supreme Court has explained
 "* * * [A] trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction. Only by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." State v. Adams
(1980), 62 Ohio St.2d 151, 154, 16 O.O.3d 169. In State v. Holley, the Eleventh District Court of Appeals held that a trial court did not commit plain error when it omitted any instruction to the jury on the firearm specification other than reading the verdict forms aloud and defining the term "firearm." State v. Holley (Dec. 17, 1999), Ashtabula App. No. 98-A-0089. However, where the State has failed to indict a defendant on a three year firearm specification and fails to make a jury instruction on the elements of a three years jury instruction, the trial court commits plain error. State v. Touvell
(June 15, 2001), Guernsey App. No. 00CA33, unreported.
In Mr. Parker's case, the trial court instructed the jury, as follows on the firearm specification, "If your verdict is Guilty, you will separately decide whether the Defendant had a firearm on or about his person or under his control while committing the offense charged in the indictment." (Tr. 617-618). The trial court then continued on to explain what constituted a "firearm." (Id.) Additionally, the trial court read the verdict form to the jury which stated, "We, the jury, find and specify that while committing the offense, the Defendant Shawn Jermaine Parker, * * * have a firearm on or about his person or under his control and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense." (Id. 624-25). Additionally, Mr. Parker had properly been indicted under R.C.2941.145(A), in language identical to that set forth under the statute. (Docket Entry No. 1). Therefore, Mr. Parker was on notice that he was subject to a mandatory three-year term of incarceration if convicted of the firearm specification.
Mr. Parker argues this case is similar to Touvell, and that the trial court's error in failing to specifically instruct the jury that they must find that he "displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense" in order to find him guilty was plain error. We disagree. Touvell involved a situation in which the defendant was not indicted under the proper firearm specification, not on notice that he could be subject to a mandatory three-year term of incarceration, and the jury verdict form did not contain the proper language for the three-year term of incarceration. This distinguishes this case from Touvell. We find that this case is similar to Holley, where the trial court erred in failing to give instructions on the element of displaying, brandishing, indicating possession, or using the firearm. We agree with the court in Holley that this does not amount to plain error. Particularly, the trial court cured part of the error by reading aloud to the jury the verdict form which properly informed the jury that they needed to find the second element of displaying, brandishing, indicating possession, or using the firearm in order to find Mr. Parker guilty. Therefore, the jury was informed that it needed to find that Mr. Parker "displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense" in order to find Mr. Parker guilty of the firearm specification. The State clearly presented sufficient evidence to prove the elements of the firearm specification by Mr. Griffith's testimony that Mr. Parker aimed the gun at his face and then later fired the gun in the course of the burglary, shooting Mr. Griffith in the hand. (Tr. 173-74, 175-78). Thus, we cannot say that the outcome of the trial would have been different but for the trial court's failure to give the proper jury instruction. We do not find plain error, and the fourth assignment of error is without merit and is overruled.
Appellant's fifth assignment of error:
 Mr. Parker argues his counsel was ineffective for failing to object to the admission of testimony and evidence which Mr. Parker asserts was inadmissible. We disagree.
We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 2065.
Mr. Parker first asserts that his counsel failed to object to the hearsay testimony of several police officers that Mr. Griffith identified Mr. Parker as his assailant. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Hearsay testimony is generally inadmissible unless it falls under an exception to the hearsay rule. Evid. R. 802. Evid. R. 803(2) provides an exception to the hearsay rule for excited utterances. In order for a statement to qualify as an excited utterance, the "statement must concern `some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties.'" Statev. Huertas (1990), 51 Ohio St.3d 22, 31, quoting Potter v. Baker (1955),162 Ohio St. 488, 55 O.O. 389.
Mr. Parker asserts that his trial counsel should have objected to Sargent West's testimony that Mr. Griffith stated that one of his attackers was "Teardrop." Sargent West encountered Mr. Griffith when Mr. Griffith was running from the apartment, just minutes after he had been shot. (Tr. 179, 180, 327). Mr. Griffith approached Sargent West, displayed his right hand, and said "I've been shot." (Id. 325). Sargent West testified that Mr. Griffith's hand was covered in blood and that he was "panicked, hysterical and anxious." (Id.). Sargent West testified that Mr. Griffith was pacing back and forth and that he had trouble getting Mr. Griffith to calm down. (Id. 331, 325) It was during this conversation that Mr. Griffith told Sargent West that one of his attackers was a man he knew as "Teardrop." (Id. 327). We find that since Mr. Griffith's statement to Sargent West was made while Mr. Griffith was still under the stress and excitement of the shooting, the statement qualifies as an excited utterance. As Sargent West's testimony falls into the excited utterance exception, it is not hearsay and therefore, his trial counsel did not fail to object to it.
Mr. Parker also asserts that his counsel failed to object to hearsay statements by Officer Mullins and Detective Beane that Mr. Griffith had stated that "Teardrop" had shot him. A declarant's out of court statements are admissible to explain the actions of a witness to whom the statement was made. State v. Thomas (1980), 61 Ohio St.2d 223, 232, 15 O.O.3d 234. If a statement is not offered to prove the truth of the matter asserted then it does not constitute hearsay. Id. Officer Mullins testified that in the course of investigating the incident he interviewed Mr. Griffith at the hospital and Mr. Griffith stated that one of the attackers was a man he knew as Teardrop. Further officer Mullins testified that Mr. Griffith explained that the man was known as Teardrop because he had a tatoo of a Teardrop under his eye. Detective Beane testified that she interviewed Mr. Griffith the day following the incident and that the officers who filled out the report had already identified three individuals who went by the name Teardrop, one of whom was Mr. Parker. (Tr. 467-68). As a result, Detective Beane compiled a photo spread which contained Mr. Parker's picture and showed it to Mr. Griffith. (Id. 468-69). Mr. Griffith identified Mr. Parker as the man he knew as Teardrop. (Id. 470). Therefore, Officer Mullins and Detective Beane's testimony was not offered for the truth of the matter asserted but to show the steps taken by the police to ultimately determine that Mr. Parker was the man who shot Mr. Griffith. Since the out of court statements were not offered for the truth of the matter asserted, the statements were not hearsay and were admissible. Thus, Mr. Parker's trial counsel did not err in failing to object to them.
Next, Mr. Parker asserts that his trial counsel was ineffective for failing to object to photographs of Mr. Parker's gunshot wounds to his leg and Detective Beane's testimony that the wounds were consistent with gunshot wounds. Evid.R. 701 provides:
 "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." A detective who has testified that he is familiar with guns and gunshot wounds can properly testify that a gunshot wound was not likely caused by a particular caliber gun. State v. Whittsette (Feb. 13, 1997), Cuyahoga App. No. 70091. Additionally, if his opinion is based on experience and observations, a police officer can give his non-expert opinion about the shot pattern of a shotgun to help explain his testimony. State v. Norman (1982), 7 Ohio App.3d 17, 18-19. Moreover, a photograph is not objectionable if it is relevant and competent, properly identified, and foundation is laid by testimony that the photograph is a fair and accurate representation of that which it purports to be. State v. Hill (1967), 12 Ohio St.2d 88, 90, 41 O.O.2d 369.
At trial, Detective Beane testified that she interviewed Mr. Parker on November 6, 2000 and observed on Mr. Parker's right knee area "two holes that were consistent with gunshot wounds that [she'd] seen in the past." (Tr. 485). Mr. Parker asserts that because Detective Beane was never qualified as a medical expert, she could not testify to the above statement. However, the detective testified that she had twenty two years of experience on the police force, had experience with victims of gunshot wounds, and was familiar with different types of gunshot wounds. (Id. 481-82, 485). The detective's opinion that Mr. Parker's wounds were gunshot wounds was rationally based on her perception and experience as a police officer. Also, the testimony assisted the jury in determining whether Mr. Parker was Mr. Griffith's attacker. Even though the detective did not opine that gunshot wounds were inflicted on October 17, 2000, the healing gunshot wounds did make it more likely that Mr. Parker was Mr. Griffith's attacker, who was shot during the incident. We find Detective Beane's testimony was proper and as such Mr. Parker's counsel was not ineffective for failing to object to it.
Mr. Parker also argues that his counsel should have objected to the photographs of the gunshot wounds. Detective Beane testified that she took the photographs of Mr. Parker's wounds and that those photographs accurately and correctly depicted Mr. Parker's wounds on November 6, 2000. (Id. 486). Moreover, Mr. Parker told the officers when he was arrested on November 5, 2000 that he had a gunshot wound to his leg. (Id. 360). We find that the admission of the photographs did not unfairly prejudice Mr. Parker. Therefore, his trial counsel was not ineffective for failing to object to them.
Next, Mr. Parker argues that his counsel was ineffective for failing to object to Detective Beane's testimony about how she compiled the photo spread that she showed to Mr. Griffith. Evidence that a defendant was identified prior to trial through a photo spread is admissible at trial so long as it does not suggest to the jury that the defendant had prior criminal involvement. State v. Wilkinson (1971), 26 Ohio St.2d 185, 187, 55 O.O.2d 444. At trial, Detective Beane testified that the police officers had three people who went by the name "Teardrop" and Mr. Parker was one of those individuals. (Tr. 468). The detective then said, "I went back — we have a computer, uh . . . photo file and I pulled up the name Shawn Parker and got a photo of him and I made a photospread." {SIC} (Id. 468-69). Mr. Parker argues that the detective's reference to the "computer" or "photo file" communicated to the jury that Mr. Parker had committed prior criminal acts. The photo spread in this case contained six photographs of similar looking black males. No police markings or numerals appear in any of the photographs. Mr. Parker relies solely on the detective's statement that she obtained his photo from a "computer" or "file" as a basis to find the testimony inadmissible. We disagree. This brief, isolated statement is insufficient to create in the mind of the jury an inference that Mr. Parker had prior criminal involvement. Therefore, Mr. Parker's trial counsel was not ineffective for failing to object to the admission of the photo spread and the detective's statement.
Finally, Mr. Parker argues that his counsel was ineffective for failing to object to Mr. Griffith's testimony relating the statement Mr. Parker made at the gas station two days prior to the incident. Mr. Parker argues this statement was highly prejudicial and hearsay. Evid. R. 801(D)(2) provides that a statement which "is offered against a party and is * * * his own statement, in either his individual or representative capacity" is not hearsay. At trial, Mr. Griffith testified that Mr. Parker said to him, "If I had my gun, I shouda shot you." As the statement was made by Mr. Parker, the statement was not hearsay and was admissible. Mr. Parker's trial counsel was not ineffective for failing to object to the statement.
Mr. Parker has failed to establish that his trial counsel was ineffective. The fifth assignment of error is without merit and is overruled.
Appellant's sixth assignment of error:
 Mr. Parker argues that the trial court erred in overruling his motion for a mistrial regarding testimony by Detective Beane and Mr. Griffith which had been heard by the jury over sustained objection. We disagree.
The decision whether to grant or deny a mistrial rests in the sound discretion of the trial court. State v. Garner, 74 Ohio St.3d 49, 59,1995-Ohio-168. A trial court should only declare a mistrial when a fair trial is no longer possible. Id. Additionally, a jury is presumed to have followed a trial court's instructions to the jury. State v. Goff,82 Ohio St.3d 123, 135, 1998-Ohio-369; State v. DePew (1988),38 Ohio St.3d 275, 284.
At trial, during Detective Beane's testimony, the prosecutor asked, "do you think it is a coincidence that Gerry Griffith told the police on October 17th that Shawn Parker said he was shot and you observed a gunshot wound to Shawn Parker's leg when he was arrested?" (Tr. 492). Mr. Parker's trial counsel objected but the detective had already responded, "no." (Id.). The trial court sustained the objection and instructed the jury to "disregard the last question and answer." (Id.). Defense counsel moved for a mistrial, explaining that the motion was coupled with "the other things that were objected to and sustained by the court and the Jury was instructed to disregard, and they dealt with the detective making an opinion outside of her legal expertise." (Id. 521-22). The only other defense objection which was sustained and resulted in an instruction to the jury was Detective Beane's testimony that when she learned that Mr. Parker had been shot during the burglary, she called local hospitals to find out if Mr. Parker had been treated for gunshot wounds. (Id. 487). However after both of these incidents, the trial court instructed the jury to disregard the detective's statements. (Id. 487, 492). Additionally, after closing arguments the trial court instructed the jury that "[s]tatements or answers that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them." (Id. 611). Based on the testimony which was stricken by the court, we cannot find that the trial court erred in overruling the motion for a mistrial, particularly when proper curative instructions were given to the jury.
Additionally, Mr. Parker argues that the trial court erroneously admitted other evidence over defense counsel's objection and that this evidence supported granting a mistrial. The trial court has a great deal of discretion in determining whether to exclude or admit certain evidence and its ruling will not be disturbed on appeal absent an abuse of discretion. State v. Lundy (1987), 41 Ohio App.3d 163, 169; State v.Graham (1979), 58 Ohio St.2d 350, 352, 12 O.O.3d 317. An abuse of discretion amounts to more than an error of law or judgment but amounts to an attitude on the part of the court which is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157, 16 O.O.3d 169. Even if evidence was erroneously admitted, this error is harmless "if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Bayless (1976),48 Ohio St.2d 73, 106, 2 O.O.3d 249.
Mr. Parker points to several statements in Detective Beane's testimony which defense objected to at trial. Mr. Parker first points to the detective's testimony that gunshot wounds occasionally are not bleeding wounds. (Tr. 482). Defense counsel objected and the trial court overruled the objection, finding that the detective's testimony was "within common human knowledge." (Id. 483). We have already stated in Mr. Parker's fifth assignment of error that the detective's testimony regarding Mr. Parker's gunshot wounds was proper opinion testimony by a lay witness based on her experience as a police officer and her familiarity with gunshot wounds. The trial court did not err in overruling the objection.
Additionally, the prosecutor asked the detective, "does it make sense to you when Gerry Griffith testified that Teardrop is the one who shot him?" Defense counsel objected and the trial court sustained the objection, not permitting the detective answer the question. We do not find the trial court erred in this situation either. Next, Mr. Parker argues the court abused its discretion in admitting hearsay evidence through Detective Beane as follows:
 "I was wanting to see where Gerry Griffith had been when — he told me — or in my investigation I learned that, uh . . . Shawn Parker had possibly fired a shot as Gerry Griffith was coming up from the couch going towards him. And I went over to the couch to find out exactly where he was on the couch, which end of it, and just to get an idea of how it happened." (Id. 481).
We find that this statement was not hearsay. As explained in Mr. Parker's fifth assignment of error, an out of court statement is only improper hearsay if it is offered for the truth of the matter asserted. In the above statement, the detective was explaining her investigative actions which led to her discovery of a bullet in the couch. Therefore, the detective's statement was not offered for the truth of the matter asserted and was not hearsay. The trial court did not abuse its discretion in admitting the statement.
Also, Mr. Parker objects to Detective Beane's testimony that Mr. Griffith was surprised that a bullet was recovered from his couch (Id. 475-77). Mr. Parker argues that this improperly bolstered Mr. Griffith's testimony. However, the detective's testimony was based on her own personal observations of how Mr. Griffith reacted to the discovery of the bullet in the couch. The statement was offered to prevent an argument by the defense that Mr. Griffith had planted the bullet in the couch. (Id. 476). The trial court did not abuse its discretion in admitting the testimony.
Moreover, Mr. Parker argues his mistrial should have been granted based on improper testimony on the part of Mr. Griffith. Mr. Parker argues that the trial court admitted over objection the improper hearsay by Mr. Griffith's testimony. Mr. Griffith testified that he had permission to be in Tyrone's apartment and when Tyrone was not in his apartment he was "in charge." (Id. 305-306). However, Mr. Griffith's testimony did not improperly communicate to the jury any statement by Tyrone. Mr. Griffith simply related his understanding of his role in Tyrone's apartment when Tyrone was not there. Mr. Griffith's understanding was based on the fact that he had keys to the apartment, could come and go as he pleased, and could exclude anyone without a key by locking the doors from the inside. Mr. Griffith's testimony on this point does not amount to hearsay and the trial court did not abuse its discretion in overruling defense's objection.
Having reviewed the asserted errors by Mr. Parker, we cannot find that the trial court erred in overruling his motion for a mistrial. The sixth assignment of error is without merit and is overruled.
Appellant's seventh assignment of error:
 Mr. Parker argues that his convictions are against the manifest weight of the evidence. We disagree.
When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra at 175.
Mr. Parker argues that his conviction was against the manifest weight of the evidence because the State's only eyewitness, Mr. Griffith, was a convicted drug trafficker and Mr. Parker presented a witness who contradicted the State's eyewitness. Mr. Parker argues that Mr. Griffith was not credible as he had a prior drug conviction and had a grudge against Mr. Parker because, according to Mr. Parker's witness, Ms. Carter, Mr. Griffith was the loser of the altercation at the gas station two days prior to the incident between Mr. Griffith and Mr. Parker. At trial, Mr. Parker presented only one witness, Ms. Carter, the mother of some of his children. Ms. Carter testified that Mr. Parker was babysitting their children while she was at work when the burglary of Mr. Griffith occurred. (Tr. 556-57). Additionally, Ms. Carter testified that she saw Mr. Parker on October 17, 2000 and that she observed his leg and that he did not have any gunshot wounds at that time. (Id. 562). However, Mr. Griffith testified that he clearly saw Mr. Parker in the apartment in the early morning on October 17, 2000 and that he held a gun in Mr. Griffith's face. (Id. 173). Mr. Griffith consistently identified Mr. Parker as one of the men who burglarized the apartment. (Id. 173, 186, 190-92, 327). Mr. Griffith knew Mr. Parker as a man named Teardrop from the neighborhood and recognized him immediately upon being shown a photo spread. (Id. 190-92).
Additionally, Mr. Griffith's account of the event was corroborated by physical evidence. Mr. Griffith informed the police within minutes of the shooting that one of his assailants had been shot. (Id. 186, 327). Then, when Mr. Parker was arrested he had what appeared to be gunshot wounds to his leg. (Id. 485). Mr. Parker confirmed that the wounds were as a result of gunfire by stating that he had been shot in the leg when the police arrested him. Additionally, bullets were found in Mr. Griffith's couch, where he stated Mr. Parker shot him in the hand and around the doorway, where Mr. Griffith stated that Mr. Parker's accomplice had shot at him upon Mr. Parker's orders. Additionally, the State impeached Ms. Carter's testimony with two prior theft convictions and a conviction for falsification and she admitted at trial that she had lied to stay out of trouble. (Id. 563-64, 570). Since Ms. Carter had a history of lying when it suited her, the jury was entitled to disbelieve her testimony. Having reviewed the totality of the evidence, we cannot say that the jury clearly lost its way and committed a manifest miscarriage of justice. Mr. Parker's conviction was not against the manifest weight of the evidence and his seventh assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur in judgment.