OPINION
Defendant-appellant, Charles Zwiebel, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated arson in violation of R.C.2909.02(A)(2), a felony of the second degree.
Appellant's conviction arises out of a fire that broke out at the Rainbow Lanes Bowling Center ("bowling alley") in Columbus, Ohio, on January 31, 1998. At the time of the fire, appellant was employed at the bowling alley.
On December 22, 1998, appellant was indicted on three counts of first-degree felony aggravated arson in violation of R.C. 2909.02(A)(1), and one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2) in connection with the bowling alley fire. Beginning on October 27, 1999, appellant was tried before a jury on the four aggravated arson counts. On November 1, 1999, the jury found appellant guilty of the single count of second-degree felony aggravated arson, but acquitted him of the three counts of first-degree felony aggravated arson.
At the conclusion of a sentencing hearing on December 10, 1999, the trial court sentenced appellant to eight years in prison, the maximum allowable sentence for his crime, and ordered appellant to make restitution to the owner of the bowling alley in the amount of $88,000.
Appellant appeals from his judgment of conviction and sentence assigning the following errors:
 I. Appellant's conviction was against the manifest weight of the evidence.
 II. The Trial Court erred in imposing the maximum sentence upon appellant.
 III. The Trial Court erred in issuing a restitution order requiring Appellant to pay eighty-eight thousand dollars in restitution.
Appellant's first assignment of error challenges his conviction as against the manifest weight of the evidence. In reviewing appellant's manifest weight claim, we sit as a "`thirteenth juror,'" reviewing the entire record, weighing the evidence and all inferences reasonably drawn therefrom, and considering the credibility of witnesses. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. However, our power to grant a new trial on manifest weight grounds is discretionary and will be exercised only in the exceptional case where the evidence weighs heavily against the conviction, and it appears that the jury lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Id.
Appellant's conviction for aggravated arson rests principally on the testimony of three witnesses: Charles Burhts, the general manager of the bowling alley, Mary Jean Foland, the ex-wife of Rainbow Lane owner Charles Garnett, and Gloria Kemmerling, the desk supervisor at the bowling alley. Burhts testified that he saw appellant enter an area from which he could gain access to the utility closet in which the fire started just minutes before. Foland testified that appellant called her on Monday, January 26, 1998, and told her that there was going to be a fire at the bowling alley on the following Saturday. Kemmerling testified that, on the day before the fire, appellant pulled her aside at work and told her that there was going to be a fire at the bowling alley, but that he did not know when the fire would occur. Kemmerling further testified that, on the morning of the fire, appellant told her that there was going to be a fire at the bowling alley on that day.
While the testimony of Bhurts, Foland, and Kemmerling is sufficient to support appellant's conviction for aggravated arson, appellant contends that his conviction is unfair given that the evidence offered at trial presented a more compelling case for finding that the owner of the Rainbow Lanes, Skip Garnett, started the fire, than it did for finding that appellant started the fire.
At appellant's trial, the defense's theory was that Garnet started the bowling alley fire to keep Foland, then his wife from whom he was separated, from getting the business as part of a divorce settlement. In fact, the defense succeeded in obtaining testimony from two of the state's key witnesses which cast suspicion on Garnett. Specifically, both Foland and Kemmerling testified that, when appellant told them about the coming fire, he always indicated that he was getting his information from Garnett, or that Garnett was the one who was going to start the fire. Foland further testified that Garnett had threatened to burn down the bowling alley on several occasions when he was angry or had been drinking. Kemmerling testified that, although it was extremely unusual for Garnett to be at the bowling alley on Saturday, and that no one had notified him of the fire, he unexpectedly arrived there less than one hour after the fire was discovered. Kemmerling also testified that, when she arrived at work on the morning of the fire, she discovered that an outside door was unlocked. Although she immediately locked the door, she discovered it unlocked again shortly after the fire was discovered. According to Kemmerling, only Garnett and Burhts had the keys to unlock the door. Finally, Kemmerling testified that the location of the unlocked door would have permitted someone to enter the bowling alley and gain access to the closet where the fire was started without being seen.
Foland's and Kemmerling's testimonies unquestionably suggest that Garnett was somehow involved in the bowling alley fire. However, the fact that Foland's and Kemmerling's testimonies tend to inculpate Garnett does not, as appellant suggests, make their testimonies exculpatory as to appellant. The jury was free to believe only those portions of Foland's and Kemmerling's testimonies which tended to implicate appellant in the fire, and reject the balance of their testimony. State v.Swiger (1966), 5 Ohio St.2d 151, 156. Even if the jury chose to accept all of Foland's and Kemmerling's testimony, it could have reasonably found, as the state suggests, that appellant's "warnings" to Foland and Kemmerling were merely attempts to "pre-blame" Garnett in order to deflect suspicion from himself. Alternatively, the jury could have believed that both appellant and Garnett were involved in the fire, and returned a conviction against the only one of the two men with whose guilt or innocense they were charged with determining. Accordingly, we cannot say that the jury lost its way or created a manifest miscarriage of justice in convicting appellant of aggravated arson.
Appellant's first assignment of error is overruled.
Appellant's second assignment of error challenges the trial court's imposition of the maximum prison sentence.
An appellate court may vacate or modify a sentence imposed by a trial court when it finds by clear and convincing evidence that the record does not support the sentence or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(1)(a) and (d).
R.C. 2929.14(C) provides, in relevant part, as follows:
 * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *.
In addition, R.C. 2929.19(B)(2)(d) provides:
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term[.]
Accordingly, when a trial court imposes the maximum sentence authorized for an offense by R.C. 2929.14(A) on an offender, the court is required to make findings that the offender meets one or more of the criteria set forth in R.C. 2929.14(C), and to give its reasons for imposing the maximum sentence. Statev. Agner (Aug. 3, 2000), Allen App. No. 1-2000-04, unreported.
R.C. 2929.19(B)(2)(d)'s requirement that a trial court give reasons for selecting consecutive sentences goes beyond the requirement to make a finding that the offender meets one of the criteria listed in R.C. 2929.14(C). State v. Belfon (July 13, 2000), Franklin App. No. 99AP-663, unreported. Rather, the "reasons" requirement of R.C. 2929.19(B)(2)(d) mandates that a trial court provide an explanation to support its findings regarding the R.C. 2929.14(C) criteria. State v. Edmonson (1999),86 Ohio St.3d 324, 326.
In the present case, the trial court made the following statement in imposing the maximum sentence upon appellant:
 Mr. Zweibel [sic], obviously, with your prior record dealing with similar-type situations and the other offenses you have been convicted of and also considering the fact how many children were involved in this incident, you could have killed many people * * *.
 I will find you are the worse form offender, you pose the greatest likelihood of committing future crimes, and I will impose the maximum sentence of eight years in the state penitentiary. * * * [Tr. 418-419.]
These statements provide both the express findings required by R.C. 2929.14(C), and the reasons for those findings as required by R.C. 2929.19(B)(2)(d). Specifically, the trial court found that appellant's offense was the worst form of arson because he set the fire when the building was full of children, and that appellant's prior record suggested that he was likely to commit future crimes.
Appellant argues, however, that the trial court's finding that appellant "could have killed many people" is not supported by the record. We disagree. Gloria Kemmerling testified that between two hundred and three hundred kids were in the bowling alley when the fire was discovered. Despite the fact that everyone in the bowling alley escaped the fire unharmed, it cannot seriously be asserted that setting a fire in a building occupied by several hundred people does not create a significant threat of a large-scale loss of life.
Appellant's second assignment of error is overruled.
Appellant's third assignment of error challenges the trial court's restitution order.
The trial court's authority to order appellant to make restitution is governed by R.C. 2919.18(A) as follows:
 Except as otherwise provided in this division and in addition to imposing court costs pursuant section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to * * *:
 (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * *
At the time of appellant's sentencing, "economic loss" was defined in R.C. 2929.01(N) as "any economic detriment suffered by a victim as a result of criminally injurious conduct and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the criminally injurious conduct." (Emphasis added.) In turn, subsection (G) of the same version of R.C. 2929.01 defines "criminally injurious conduct" as "any conduct of the type that is described in division (C) (1) or (2) of section 2743.51 of the Revised Code and that occurs on or after July 1, 1996 * * *." Finally, the version of R.C. 2743.51(C) in effect at the time of appellant's sentencing provides that "criminally injurious conduct" is "any conduct that * * * poses a substantial threat of personal injury or death."
Appellant asserts that his acquittal on first-degree felony aggravated arson in violation of R.C. 2909.02(A)(1) foreclosed the trial court from ordering restitution in this case. R.C. 2909.02(A)(1) provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]" Equating the "substantial risk of serious physical harm to any person" requirement of R.C. 2909.02(A)(1) with the "criminally injurious conduct" requirement necessary to order restitution, appellant argues that his acquittal on first-degree aggravated arson created a conclusive finding that he did not commit "criminally injurious conduct."
First, appellant is mistaken in equating the "substantial risk of serious physical harm" element of first-degree felony aggravated arson with the "criminally injurious conduct" requirement necessary to order restitution, as the former requires a showing of greater potential harm than the latter. Specifically, a conviction for first-degree felony aggravated arson requires a showing that the defendant created a "substantial risk of serious physical harm[.]" R.C. 2909.02(A)(1). In contrast, establishing that appellant committed "criminally injurious conduct" only requires a showing that appellant's conduct posed a "substantial threat of personal injury." R.C.2743.51(C). (Emphasis added.)
Further, the jury's acquittals of appellant on the three counts of first-degree felony aggravated arson do not constitute a finding that appellant's conduct did not "pose a substantial threat of personal injury or death." Rather, the acquittals merely establish that the state failed to establish all of the elements of first-degree felony aggravated arson. For example, the jury might well have found that appellant's conduct created a substantial threat of personal injury or death but acquitted him because it could not find that the state had established that appellant acted knowingly.
Finally, even if the jury did find that the state failed to prove that appellant created a substantial threat of personal injury or death, the trial court was still free to reach a contrary conclusion for sentencing purposes. The burden of proof for purposes of sentencing is a preponderance of the evidence.State v. Casalicchio (1991), 58 Ohio St.3d 178, 181. In contrast, the burden of proof for purposes of determining a defendant's guilt or innocence is beyond a reasonable doubt. Thus, even if the jury concluded that there was insufficient evidence to find beyond a reasonable doubt that appellant created a substantial threat of personal injury or death, the trial court could still find by a preponderance of the evidence that appellant created such a threat for purposes of ordering restitution.United States v. Watts (1997), 519 U.S. 148, 155, 157,117 S.Ct. 633, 638.
Appellant also argues that the trial court's restitution order was improper because the restitution order related to property damage rather than personal injury or death, and because no personal injury or death actually resulted from his conduct. As noted, restitution may be ordered "in an amount based on the victims economic loss." R.C. 2919.18(A)(1). In turn, the definition of "economic loss" expressly includes "property loss." R.C. 2929.01(N). Further, R.C. 2743.51(C)'s definition of "criminally injurious conduct" makes it clear that a personal injury or death need not actually occur in order for restitution to be ordered. Rather, restitution may be ordered if appellant's conduct posed a "substantial threat of personal injury." R.C.2743.51(C). As we have noted, the evidence that appellant set fire to a building occupied by several hundred people is sufficient to establish such a threat.
Appellant's third assignment of error is overruled.
Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
PETREE and KENNEDY, JJ., concur.