This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio (the "State"), appeals a sentence rendered in the Lorain County Court of Common Pleas. The appellee, Jeffrey Saxton ("Saxton"), cross appeals from his convictions of grand theft, perjury, and engaging in a pattern of corrupt activity. We affirm.
 I. {¶ 2} Prior to this case, Saxton was employed as an insurance salesman. Saxton represented different agencies and sold a variety of products intended to accomplish estate management such that estate taxes, probate court, and Medicaid spend down requirements could be avoided. Among these products were irrevocable investment trusts and common law business organizations requiring specific property transferrals after the sale in order to become effective. Saxton's clients included elderly citizens of limited understanding and financial means, some of whom were unaware that further action was required or that their limited financial means rendered the products unnecessary.
 {¶ 3} Having received complaints about Saxton's sales, the State conducted a grand jury inquiry into his practices, subpoenaed Saxton's records, and elicited his testimony. On October 27, 1998, the grand jury indicted Saxton on seven counts of grand theft in violation of R.C.2913.02(A)(3), one count of perjury in violation of R.C. 2921.11(A), a felony of the third degree, and one count of intimidation in violation of R.C. 2921.04(A), a misdemeanor of the first degree. On June 7, 2000, the grand jury returned a supplemental indictment charging four counts of the sale of unregistered securities in violation of R.C. 1707.44(C)(1), a felony of the fourth degree. On August 2, 2000, the grand jury returned an additional supplemental indictment charging three additional counts of the sale of unregistered securities, three counts of false representation in violation of R.C. 1707.44(B)(4), and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the second degree. Saxton entered "not guilty" pleas on all charges. The parties conducted a jury trial, and the jury returned guilty verdicts on three counts of grand theft, one count of perjury, and one count of engaging in a pattern of corrupt activity. The jury found Saxton "not guilty" on the remaining counts of the indictments.
 {¶ 4} Saxton was sentenced to five years of community control sanctions and thirty-five hours of community service, was fined $2,650, and was ordered to pay $12,500 in restitution payable at $250 a month. The State appealed the sentence, raising one assignment of error. Saxton cross-appealed, raising seven assignments of error. We affirm.
 II. Appellant/Cross-Appellee's Assignment of Error "THE TRIAL COURT ERRED IN SENTENCING APPELLEE/CROSS-APPELLANT TO COMMUNITY CONTROL SANCTIONS WHERE THERE WAS A PRESUMPTION IN FAVOR OF PRISON PURSUANT TO O.R.C. § 2929.13(D) WHICH WAS NOT OVERCOME."
 {¶ 5} In its sole assignment of error, the State argues that, given the presumption that jail time should be imposed on convictions of a felony of the second degree, the trial court was statutorily required to make certain findings and state reasons when it imposed community service in lieu of jail time. The State claims that the record does not contain the required findings and reasons and therefore the failure to impose a sentence of imprisonment is error.
 {¶ 6} Pursuant to R.C. 2953.08(G)(2), when an appellate court reviews a trial court sentence, the appellate court may modify the sentence or remand for resentencing if the appellate court finds that the trial court clearly and convincingly acted contrary to law or the record. See State v. Winland (Jan. 26, 2000), 9th Dist. No. 99CA0029, at 3. Evidence is clear and convincing when it provides in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 7} "Throughout the sentencing process, trial courts are to be guided by the dual purposes of felony sentencing: protection of the public and punishment of the offender." State v. Sims (Dec. 9, 1998), 9th Dist. No. 19018, at 3. R.C. 2929.11(A). For offenses constituting a second degree felony, a prison term is presumed necessary in order to comply with the purposes of the sentencing statute. R.C. 2929.13(D);State v. Scott (Dec. 30, 1998), 9th Dist. No. 19008, at 5. In reviewing whether a prison term is consistent with the purposes of the sentencing statute, a trial court is guided by the seriousness factors enumerated in R.C. 2929.12(B) and (C), as well as any other relevant factors. Scott, supra, at 4. The trial court then must determine if the defendant is amenable to community control by applying the factors listed in R.C.2929.12(D) and (E). Sims, supra at 3.
 {¶ 8} As to the seriousness factors to be considered, R.C. 2929.12
states in pertinent part:
 "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 "(6) The offender's relationship with the victim facilitated the offense.
 "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
"(1) The victim induced or facilitated the offense.
 "(2) In committing the offense, the offender acted under strong provocation.
 "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
 {¶ 9} As to the recidivism factors to be considered, R.C. 2929.12
states in pertinent part:
 "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
"(5) The offender shows no genuine remorse for the offense.
 "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
 "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 "(4) The offense was committed under circumstances not likely to recur.
"(5) The offender shows genuine remorse for the offense."
 {¶ 10} R.C. 2929.13(D) allows a trial court to overcome the presumption requiring imprisonment on felonies of the second degree and instead order community control sanctions.
 "(D) [F]or a felony of the first or second degree *** it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing under section 2929.11 of the Revised Code. Notwithstanding the presumption established under this division, the sentencing court may impose a community control sanction or a combination of community control sanctions instead of a prison term on an offender for a felony of the first or second degree *** if it makes both of the following findings:
 "(1) A community control sanction or a combination of community control sanctions would adequately punish the offender and protect the public from future crimes, because the applicable factors under section 2929.12
of the Revised Code indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater likelihood of recidivism.
 "(2) A community control sanction or a combination of community control sanctions would not demean the seriousness of the offense, because one or more factors under section 2929.12 of the Revised Code that indicate that the offender's conduct was less serious than conduct normally constituting the offense are applicable, and they outweigh the applicable factors under that section that indicate that the offender's conduct was more serious than conduct normally constituting the offense." R.C. 2929.13(D).
 {¶ 11} At the sentencing hearing, the State reviewed the recidivism factors and stated,
 "Perhaps Mr. Saxton *** would not commit this offense again. I don't know, because he wouldn't be inclined to, but if he's in a position to, maybe recidivism is likely. So I guess when you weigh those factors, Your Honor, I might concede to this Court that the recidivism factors weigh in favor of this defendant."
 {¶ 12} The State then went on to argue that the seriousness factors weigh heavily against Saxton, such that prison time should be imposed. Specifically, the State argued that the offender held a position of trust and the offense related to that office; offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others; the offenses were committed against vulnerable victims; and Saxton committed the offense as part of an organized criminal activity. The State also stated that a prison sentence was necessary to make an example to warn others who may sell the same products in the future. The State, when reviewing the factors of R.C.2929.12(C), stated that of the four factors indicating that the crime was less serious than conduct normally constituting the offense, only one factor applied to this case: that when committing this offense, Saxton did not cause or expect to cause physical harm to any person or property.
 {¶ 13} When sentencing Saxton, the trial court found that all offenses were against the elderly, that the offenses were committed through Saxton's course of employment, that Saxton knew the financial and mental state of his victims, and that he knew or should have known that his victims could not benefit from the products sold. However, when announcing sentence, the trial court stated:
 "The court finds that pursuant to 2929.13(D), that a non-prison sanction in this instance, comes close, but does not demean the seriousness of the offense. *** A non-prison sanction could and would adequately punish you and protect the public in this instance, and the Court does not feel there is a likelihood of recidivism, at this point."
 {¶ 14} As shown above, both of the findings required by R.C.2929.13(D) are contained in the transcript of the sentencing hearing. The trial court also gave reasons for the findings; in justifying the imposition of community control sanctions, the trial court indicated that the factors in 2929.12(B) regarding seriousness were reviewed, but found that one factor indicating that the seriousness of the conduct was less than conduct normally constituting the offense — that Saxton did not cause or intend to cause physical harm — tipped the balance of the seriousness scale in Saxton's favor. The plain language of R.C.2929.13(D) allows for the possibility that only one of "less serious" factors can outweigh the "serious" factors. The court also found mitigating circumstances in the need for restitution in this case, and in the young ages of Saxton's three children. Further, the court found that the recidivism factors were also tipped in Saxton's favor, a finding that the State seemed to concede when presenting its arguments on the record.
 {¶ 15} Consequently, the transcript of the sentencing hearing contains the findings and the reasons required by R.C. 2929.13, and that the trial court made its determination based upon the seriousness and recidivism factors of R.C. 2929.12. Therefore, we cannot find by clear and convincing evidence that the trial court acted contrary to the law or to the record. The State's sole assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 2 "THE INDICTMENT OF R.C. § 2923.3[2](A)(1) IS CONSTITUTIONALLY INVALID AS IT ALLOWED THE JURY TO CONVICT THE CROSS-APPELLANT OF OVERT ACTS NOT NAMED IN THE INDICTMENT."
 {¶ 16} In the second assignment of error, Saxton argues that the indictment was constitutionally infirm because the language of the indictment stated that the jury could consider acts not listed in the indictment in order to convict under Count 20, engaging in a corrupt activity. Therefore, Saxton claims that the essential elements were missing from the indictment. Further, Saxton states that a corrupt activity charge requires a unanimous jury finding on which acts constituted the corrupt activity, and the trial court in this case did not submit an interrogatory to ensure that the jury agreed unanimously on which of Saxton's acts constituted the corrupt activity. Saxton did not raise these issues in the trial court, and in his reply brief raises plain error.
 {¶ 17} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court." Crim.R. 52(B). Crim.R. 52(B) places three limitations on the decision of a reviewing court to correct an error despite the absence of a timely objection at trial. State v. Barnes (2002), 94 Ohio St.3d 21,27. "First there must be an error, i.e., a deviation from a legal rule."Id., citing State v. Hill (2001), 92 Ohio St.3d 191, 200. "Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings." Id., citing State v. Sanders (2001), 92 Ohio St.3d 245, 257. "Third, the error must have affected `substantial rights.'" Id. "Affecting substantial rights" under plain error analysis means that the court's error must have affected the outcome of the trial. Id. Plain error is defined as "error but for the occurrence of which it can be said that the outcome of the trial would have clearly been otherwise." State v. Sanders (May 17, 2000), 9th Dist. No. 19783, at 3. The Ohio Supreme Court has recognized that the plain error doctrine should be applied sparingly and only when necessary to prevent a clear miscarriage of justice. Id., citing Statev. Wolery (1976), 46 Ohio St.2d 316, 327.
 {¶ 18} R.C. 2923.32(A)(1) states, "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
"Corrupt activity" is defined in R.C. 2923.31 as:
 "(I) *** [E]ngaging in, attempting to engage in, conspiring to engage in[:]
"***
"(2) Conduct constituting any of the following:
"***
 "(c) Any violation of section *** [R.C.] 2913.02 *** when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars[.]"
"Pattern of corrupt activity" is defined in R.C. 2923.31 as:
 "(E) [T]wo or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
 "At least one of the incidents forming the pattern shall occur on or after January 1, 1986. Unless any incident was an aggravated murder or murder, the last of the incidents forming the pattern shall occur within six years after the commission of any prior incident forming the pattern, excluding any period of imprisonment served by any person engaging in the corrupt activity.
 "For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, at least one of the incidents forming the pattern shall constitute a felony under the laws of this state in existence at the time it was committed or, if committed in violation of the laws of the United States or of any other state, shall constitute a felony under the law of the United States of the other state and would be a criminal offense under the law of this state if committed in this state."
 {¶ 19} There were three indictments in this case, issued at three separate times. We discuss only those charges in the indictments which resulted in convictions, to wit: Count 3, alleging grand theft against Edna Fleming on or about October 3, 1996, in violation of R.C.2913.02(A)(3), issued on October 27, 1998; Count 5, alleging grand theft against Rolland Green, Sr. on or about November 5, 1996 in violation of R.C. 2913.02(A)(3), issued on October 27, 1998; Count 6, alleging grand theft against Jose and Susana Rivera on or about November 26, 1996, in violation of R.C. 2913.02(A)(3), issued on October 27, 1998; Count 8, alleging perjury on or about December 2, 1997, in violation of R.C.2921.11(A), issued on October 27, 1998; and Count 20, alleging a pattern of corrupt activity from June 18, 1996 to November 39, 1997, in violation of R.C. 2923.32(A)(1). The language that Saxton finds problematic in Count 20 is the declaration that:
 "[t]he Grand Jurors further find that the pattern of corrupt activity includes but is not limited to the acts set forth in the remaining counts of the indictment in violation of Ohio Revised Code 2913.02 and Ohio Revised Code 1707.44(B)(4) as well as other violations of Ohio Revised Code 1707.44(B)(4) perpetrated against Irene Sobotka (on or about February 3, 1997), Donald Gross (on or about June 25, 1996), and Rosemary Horvatich or her family trust (on or about the period of time from July 16, 1996 to March 3, 1997.)"
 {¶ 20} Specifically, Saxton takes exception to the statement "includes but is not limited to the acts set forth in the remaining counts of the indictment" for two reasons: because Saxton believes the language gives the petit jury the leeway to convict on the charge without coming to a unanimous agreement on which acts constitute the pattern of corrupt activity, and because it frees the petit jury to consider acts outside the indictment, thus depriving him of notice.
 {¶ 21} In the end, Saxton was convicted of three separate felony theft charges, violations of R.C. 2913.02, each of which required a unanimous verdict from the jury and each of which fell within the time frame in the indictment for the charge of engaging in a corrupt activity. The engaging in a corrupt activity charge required that the jury determine there were two or more acts, which could be satisfied by acts in violation of R.C. 2913.02. Because Saxton was unanimously convicted of three acts which satisfy the requirements of R.C. 2923.32, engaging in a corrupt activity, he is unable to show that his substantial rights were impaired and there is no plain error.
 {¶ 22} Saxton's second assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 3 "THE FINDING OF GUILTY BY THE JURY OF R.C. § 2923.31(A)(1) IS VIOLATIVE OF THE DUE PROCESS CLAUSE AS THE JURY WAS NOT REQUIRED TO UNANIMOUSLY FIND THE CROSS-APPELLANT GUILTY OF EACH MATERIAL ELEMENT OF THE OFFENSE."
 {¶ 23} In this assignment of error, Saxton claims that the jury instructions did not require unanimity on the two overt acts necessary to convict on a charge of engaging in corrupt activity. As in the prior assignment of error, Saxton did not raise these issues in the trial court, and in his reply brief raises plain error.
 {¶ 24} The jury instructions for Count 20 state in entirety:
 "Before you can find the defendant guilty of the offense that is charged in Count [20], you must find that the State of Ohio has proved, by proof beyond a reasonable doubt, all of the essential elements of the count of Count [20], which are: On or about during the time period June 18, 1996, to November 30, 1997, the defendant, Jeffrey Saxton, did knowingly or unlawfully, while employed by or associated with any enterprise, conduct or participate in the affairs of the enterprise, directly or indirectly, through a pattern of corrupt activity, and venue, that it happened in Lorain County, Ohio.
 "`Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. `Enterprise' includes illicit as well as licit enterprises.
 "The State alleges that the enterprise in this case consists of Douglas Shisler, James Binge, James Snively, Edmund Bartoli, Eric Bartoli, The Athens Company, First Associated Securities Group now known as Accounting and Financial Services, and/or the defendant, Jeffrey Saxton.
 "`Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time or place that they constitute a single event. Each incident must have taken place on or after January 1, 1986, and at least one of the incidents must be a felony.
 "`Corrupt activity' means engaging in, attempting to engage in, or conspiring to engage in the offenses of false representation, theft, and grand theft. Each offense or any combination thereof must have a value of $500 or more. You are hereby instructed that each of these offenses is a felony.
 "If you find that the State of Ohio has proved, by proof beyond a reasonable doubt, all of the essential elements of the offense, which is charged in the indictment, then your verdict must be that the defendant is guilty of such offense, according to your findings.
 "If you find that the State has failed to prove, by proof beyond a reasonable doubt, any one of the essential elements of an offense charged, then your verdict must be that the defendant is not guilty as to such offense, according to your findings."
 {¶ 25} We review this assignment of error under the plain error doctrine, as articulated in our discussion of the second assignment of error. As also discussed in our analysis of the second assignment of error, because the jury unanimously convicted on three felony theft charges which satisfied the elements of R.C. 2923.32, Saxton is unable to show that his substantial rights were impaired; therefore, there is no plain error.
 {¶ 26} Saxton's third assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 4 "THE TRIAL COURT ERRED BY ALLOWING PREJUDICIAL OTHER ACTS EVIDENCE TO BE INTRODUCED TO THE JURY."
 {¶ 27} In the fourth assignment of error, Saxton argues that it was prejudicial for the trial court to admit testimony from witnesses who were not named in the indictment, but who alleged that Saxton sold them, or a relation, his products. Saxton claims that the admission of that testimony was more prejudicial than probative, was irrelevant, and was offered to show character and acts in conformity therewith. Saxton also alleges, without explanation, that the admission of the testimony violates the Fifth, Sixth, Eighth and Fourteenth Amendment of the United States Constitution. We disagree.
 {¶ 28} "A trial court enjoys broad discretion in admitting evidence." State v. Long (1978), 53 Ohio St.2d 91, 98. We will not disturb a trial court's ruling absent an abuse of that discretion. Id.
"`[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When other acts testimony is relevant to prove a pattern of corrupt activity pursuant to R.C.2923.32(A)(1), it is not inadmissible under Evid.R. 404(B). State v.Frato (Sept. 16, 1992), 9th Dist. Nos. 91CA005237, 91CA005238, at 4.
 {¶ 29} Saxton was tried on several charges, including engaging in a pattern of corrupt activity, R.C. 2923.32(A)(1), which required the state to present evidence that Saxton had in fact participated in a "pattern" of corrupt activity. As stated previously, R.C. 2923.31(E) defines "pattern of corrupt activity" as:
 "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
 {¶ 30} Given the broad discretion afforded a trial court in admitting evidence, we cannot find an abuse of discretion in the admission of the testimony. The testimony is admissible to prove the charge of engaging in a corrupt activity. Further, two of the witnesses testified to the sale of the common law business organizations ("CBO's"), and that testimony is relevant to the perjury charge.
 {¶ 31} Saxton's fourth assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 5 "THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF PERJURY IN VIOLATION OF R.C. § 2921.11(A)."
 {¶ 32} In his fifth assignment of error, Saxton argues that his testimony before the grand jury was not perjury, but the result of misunderstanding what information the prosecutor was seeking, and was not a deliberate, false statement calculated to mislead. Saxton claims that "[a]ny mistake [Saxton] made could be attributed to nervousness, surprise, and convoluted questions far more easily than a bad intent." Further, Saxton argues that his testimony was immaterial. Although the assignment of error raises sufficiency, the arguments presented challenge the manifest weight of the evidence.
 {¶ 33} As an initial matter, this court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. Statev. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, at ¶ 25. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 34} In reviewing whether a conviction is against the manifest weight of the evidence, this court must:
 "Review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 35} The perjury statute, R.C. 2921.11, states in pertinent part:
 "(A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material.
 "(B) A falsification is material, regardless of its admissibility into evidence, if it can affect the course or outcome of the proceeding. It is no defense to a charge under this section that the offender mistakenly believed a falsification to be immaterial.
 "(D) Where contradictory statements relating to the same material fact are made by the offender under oath or affirmation and within the period of the statute of limitations for perjury, it is not necessary for the prosecution to prove which statement was false, but only that one or the other was false."
 {¶ 36} "Where from the evidence reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt, the question is one for determination by the jury." State v. Swiger (1966), 5 Ohio St.2d 151, paragraph two of the syllabus.
 "The jury is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. In reaching its verdict, the jury should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the defendant, and his interest, if any, in the outcome." State v. Antill (1964), 176 Ohio St. 61, 67.
 "The trial court and the jury have the witnesses before them and they are able to determine what testimony they will believe and what testimony they will not believe and Appellate Courts of the State of Ohio will not substitute their fact findings for that of a jury or that of a trial court." State v. Vanhouten (Feb. 23, 1982), 5th Dist. No. 81-CA-10. See, also, Cooper v. State (1930), 121 Ohio St. 562.
 {¶ 37} It is the jury's province to weigh the evidence, assess the credibility of the witnesses and determine whom to believe. See State v.DeHass (1967), 10 Ohio St.2d 230, 227, paragraph one of the syllabus. A conviction is not against the weight of the evidence merely because there was conflicting testimony before the trial court. Akron v. Bilder, 9th Dist. No. 21237, 2003-Ohio-2428, at ¶ 15.
 {¶ 38} On the perjury charge, Saxton argues that the State did not prove the element of intent beyond a reasonable doubt. In support of his argument, he claims that there is an alternative explanation for the discrepancy in his testimony before the grand jury, that his testimony was immaterial, and that his statements were "of omission, not of commission."
 {¶ 39} The transcript of Saxton's grand jury testimony indicates that Saxton stated under oath that he sold only four CBO's. The discrepancy between the number of CBO's that the State claims were actually sold and Saxton's grand jury testimony formed the basis of the perjury charge. At trial, the state presented evidence of twelve CBO's that Saxton had sold, a fact Saxton confirmed while testifying.
 {¶ 40} Because Saxton misstated what he sold, his testimony could have affected the outcome of the proceedings, and the jury could find that his testimony was material to the grand jury's inquiry. Further, from the totality of the evidence, the jury could find that Saxton's testimony before the grand jury was made knowingly. We find no basis to disagree with the jury's resolution of the case.
 {¶ 41} Saxton's fifth assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 6 "THE TRIAL COURT ERRED BY OVERRULING THE PROSECUTOR'S IMPROPER QUESTIONING OF PROSPECTIVE JURORS IN THE VOIR DIRE EXAMINATION."
 {¶ 42} In this assignment of error, Saxton claims that the prosecutor was permitted to ask questions during voir dire which "were designed to provide specifics on the factual issues that may have been involved and how the jury would react to certain issues that would be presented." Further, Saxton argues that the questioning failed to state the law fairly and accurately, and did not make clear that the judge was the final arbiter of the law.
 {¶ 43} "The purpose of the examination of a prospective juror upon his voir dire is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant." Vega v. Evans (1934), 128 Ohio St. 535, paragraph one of the syllabus. See, also, Dowd-Feder, Inc. v. Truesdell
(1936), 130 Ohio St. 530, paragraph one of the syllabus. In order to ensure that result, counsel is afforded reasonable latitude on the voir dire examination. Krupp v. Poor (1970), 24 Ohio St.2d 123, 125.
 "The scope of the inquiry will not be confined strictly to the subjects which constitute grounds for the sustaining of a challenge for cause; but if it extends beyond such subjects it must be conducted in good faith with the object of obtaining a fair and impartial jury and must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or an unfair attitude toward any litigant." Vega v. Evans, supra, at paragraph two of the syllabus.
 "It is neither wise nor desirable for this court to prescribe the specific form such interrogatories are to take, or the manner of their presentation. That is a matter wholly for the trial court to determine in the exercise of its sound discretion and in the light of all the facts and surrounding circumstances." Dowd-Feder, Inc. v. Truesdell
(1936), 130 Ohio St. at 535.
 {¶ 44} "Much rests in the discretion of the court as to what questions may or may not be answered, but in practice very great latitude is, and generally ought to be indulged." Id. at 533. The scope of the examination during voir dire is within the sound discretion of the trial court and the judgment will not be reversed absent a showing that the trial court abused its discretion. State v. Jenkins (1984),15 Ohio St.3d 164, 186. "`[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. When exercising discretion, the trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case. Dayton v. Meyer (Mar. 29, 1991), 2d Dist. No. 11848. A juror may be removed for cause if the juror's answers given in voir dire reveal that the juror cannot be fair and impartial, or will not follow the law as given by the court. R.C.2313.42(J); State v. Cornwell (1999), 86 Ohio St.3d 560, 563.
 {¶ 45} In the brief, Saxton lifts four questions from the prosecutor's voir dire, claiming that the questions were "far more specific than the `general' questions that the trial court indicated that prosecutor was permitted to ask." Saxton argues that the questions interjected specific components of due diligence, and were an attempt on the prosecutor's part to indoctrinate the jurors with the prosecutor's interpretation of the law. Saxton then, in what amounts to an afterthought, claims that the questioning violated his Fifth andFourteenth Amendment rights under the United States Constitution.
 {¶ 46} A review of the record indicates that the four questions, when examined in context, were part of a long line of questioning regarding the jurors' feelings on voting in accordance with the law, especially a law wherein the government is imposing regulations upon license holders which may be onerous or seem unfair. In response to Saxton's objections, the trial court stated that the questions were not specific, but general inquiries into the jurors' thoughts. Inquiries designed to determine if the juror will be unbiased and will vote in accordance with law are permissible, and such inquiries may form a basis for removal under R.C. 2313.42(J). Therefore, we find no abuse of discretion. Saxton's sixth assignment of error is overruled.
 Appellee/Cross-Appellant's Assignment of Error No. 7 "THE CROSS-CROSS-APPELLANT (SIC) WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 47} In the seventh assignment of error, Saxton claims that he was denied ineffective assistance of counsel because the trial counsel did not object to the indictment, to the State's closing argument, or to the trial court's jury instruction regarding the charge of engaging in a corrupt activity, and did not request "a verdict form properly reflecting the law in this matter."
 {¶ 48} The Sixth Amendment guarantees the right to effective assistance of counsel to each defendant. Courts use a two step process in determining whether a defendant's right to effective assistance of counsel has been violated.
 "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 49} In order to demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.
 {¶ 50} The court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." Id., at 690. First, the defendant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Then, the court must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id., at 690. There is a strong presumption that counsel's performance was adequate. State v. Smith
(1985), 17 Ohio St.3d 98, 100.
 {¶ 51} Saxton properly cites to Strickland as articulating the standard to determine ineffective assistance of counsel; however, Saxton does not posit an argument demonstrating that the Strickland test is met in this case. Saxton states only that "the errors noted in Assignments of Errors Two and Three are of a constitutional magnitude" and "the failure to properly object cause the result of the proceeding to be fundamentally unfair or unreliable." Those statements do not demonstrate to this Court how the trial counsel's errors were so serious that they were not functioning as the `counsel' guaranteed the defendant by theSixth Amendment or show that counsel's errors were so serious as to deprive the defendant of a fair trial.
 {¶ 52} Saxton's seventh assignment of error is overruled.
 III. {¶ 53} Appellant/Cross-Appellee's sole assignment of error is overruled. The assignments of error of the Appellee/Cross-Appellant are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
SLABY, P.J. and WHITMORE, J. CONCUR.